IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| MARK SAPP, ) | |
| ) | |
| Plaintiff, ) | Civil No. 1:16-cv-105 |
| ) | |
| v. ) | Hon. Liam O'Grady |
| ) | |
| LIBERTY LIFE ASSURANCE COMPANY ) | |
| OF BOSTON, ) | |
| ) | |
| Defendant. ) | |

## Memorandum Opinion

This dispute arose when Plaintiff Mark Sapp sued Liberty Life Assurance Company of Boston ("Liberty") under the Employee Retirement Income Security Act of 1974 ("ERISA") seeking long-term disability (LTD) benefits due to him under the terms of his employee benefit plan. Because Liberty did not reasonably consider and evaluate the evidence of Mr. Sapp's job description in its determination of Mr. Sapp's "Own Occupation" and its subsequent denial of Mr. Sapp's LTD benefits, Liberty's abused its discretion under the Policy. Therefore, for the reasons that follow, Mr. Sapp's motion for summary judgment is granted and Liberty's cross-motion for summary judgment is denied.

### I. BACKGROUND

Mr. Sapp was employed with Republic National Distributing Company ("Republic") as a wine salesman. Republic categorized Mr. Sapp's position as "Sales Representative—Retail"

1

...

with a focus on the tasks of merchandizing and servicing stores. Mr. Sapp's job responsibilities included making deliveries, filling shelves, creating store displays, and carrying and moving boxes of wine in excess of twenty pounds. In performing his duties, he also drove more than 24,000 miles a year.

On February 25, 2014, Mr. Sapp hurt his back on the job while lifting boxes of wine. He received surgery for this injury. After the operation and subsequent physical therapy, his doctors determined he could not lift more than 10 pounds, bend, twist, stoop, or sit for longer than 45 minutes. Defendants have not produced any contradictory medical evidence and do not otherwise contest these medical determinations.

### A. The Policy

Mr. Sapp's employer, Republic National Distributing Company, maintains an employee benefit plan through Liberty that sponsors a LTD policy, GF-3890-455090-01, ("the Policy"), for its employees. In general, the Policy provides LTD benefits for employees who become disabled while in active employment with Republic.

The Policy defines the terms necessary for its LTD benefits determinations. A "Disabled" employee is someone who, "as a result of injury or sickness, is unable to perform the Material and Substantial Duties of his Own Occupation." In addition, "Material and Substantial Duties" are defined as "responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonable eliminated or modified." In turn, "Own Occupation" is defined as "the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the national economy."

2

Liberty is responsible for administering the plan and making any benefits determinations under the plan. Specifically, Liberty was granted "sole discretion [ ] to construe the terms of the policy and to determine benefit eligibility."

### B. Administrative History

Following his injury, Liberty informed Mr. Sapp that it would evaluate his claims for LTD under the Policy on August 4, 2014. Liberty referred the claim to a vocational expert, who was an employee of Cascade Disability Management, a Liberty affiliate. The vocational expert reviewed the electronic claim file as well as "standard vocational resources (e.g., Dictionary of Occupational Titles ("DOT"), Occupational Outlook Handbook ("OOH"), Occupational Information Network ("O*NET")/Standard Occupational Classification ("SOC") coding system, etc.), and Internet job boards" in making her determination. In the claim file, Mr. Sapp's employer listed his position as "Sales Representative – Retail," and the vocational expert found that there was no appropriate DOT description for a general sales representative in the Dictionary.

The Vocational Expert compared Mr. Sapp's job to two O*NET occupational classifications: "Sales Representatives, Services, All Other"; and "Sales Representatives, Wholesale and Manufacturing, Except Technical and Scientific Products." The vocational expert took these classifications and her additional research and issued a report that concluded: "the occupation of Sales Representative is not performed in one definitive manner in the national economy. Rather, taking into consideration the nature of the work in the SOC/O*NET and OOH descriptions, the occupation is most often performed at the sedentary and light levels of physical demand based on the Department of Labor descriptions found in the DOT, with sufficient opportunity at both levels."

3

Relying on this report, Liberty denied coverage on August 8, 2014. Liberty asserted that Mr. Sapp's "Own Occupation," as defined by the policy, was "41-4012.00–Outside Sales Representative," which is categorized as a "light work" position under Department of Labor ("DOL") occupations. As a result, Liberty determined that the post-surgery restrictions placed on Mr. Sapp by his doctors would not interfere with a "light work" position and therefore he did not qualify as disabled. Liberty informed Mr. Sapp of his right to appeal within 180 days.

On August 28, 2014, Mr. Sapp appealed and incorporated additional information regarding his duties as a wine salesman. These included: driving more than 24,000 miles per year; filling shelves; lifting cases of wine that weigh an average of 45 pounds; and bending, kneeling, and reaching for wine bottles on store shelves. He also provided medical notes requested by Liberty. On October 21, 2014, Liberty denied the appeal and affirmed the denial of benefits.

On February 1, 2016, Mr. Sapp filed this action to recover benefits due under 29 U.S.C. § 1132(a)(1)(B). He now moves for summary judgment, arguing that: (1) Liberty's denial of benefits was not reasonable because it ignored important evidence of in defining Mr. Sapp's Own Occupation, including information provided by Mr. Sapp on appeal; and (2) Liberty failed to consider the more appropriate occupational title of 53.3021.00—Driver/Sales Worker," which is a "medium work" position. Liberty filed a cross-motion for summary judgment, arguing that the denial of benefits was within its discretion under the Policy.

## II. DISCUSSION

### A. Legal Standard

When reviewing a plan administrator's decision to deny benefits in the ERISA context, courts must first look to the policy's language to decide whether the administrator has been

4

granted discretion to determine benefit eligibility under the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 268 (4th Cir. 2002). Where the plan confers discretionary authority on the plan administrator, courts apply an abuse of discretion standard to evaluate the eligibility determination. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008).

The abuse of discretion standard in this context means the administrator's decision must "result from a 'deliberate, principled reasoning process' and be supported by substantial evidence." *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 630 (4th Cir. 2010). The review should "show enough deference to a primary decisionmaker's judgment that the court does not reverse merely because it would have come to a different result in the first instance." *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 321 (4th Cir. 2008).

The Fourth Circuit has set forth eight factors to guide the application of this standard:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Booth v. Wal-Mart Stores, Inc. Associates Health & Welfare Plan*, 201 F.3d 335, 342 (4th Cir. 2000).

Expanding on these principles, the Fourth Circuit has held that "a district court may consider evidence outside of the administrative record on abuse of discretion review in an ERISA case when such evidence is necessary to adequately assess the *Booth* factors and the evidence was known to the plan administrator when it rendered its benefits determination." *Helton v. AT&T Inc.*, 709 F.3d 343, 356 (4th Cir. 2013). The Court further noted that knowledge

5

obtained by employees may be imputed on a corporation under the principles of agency law. *Id.* Other circuits have expanded this to include facts or evidence about which that the plan administrator "knew or should have known." *Id.* at 353.

For disability determinations, the evidence that a plan administrator should consider in making its determination includes a "review of the material duties of the claimant's particular position and an assessment of how those duties align with the position as it is normally performed in the national economy." *See Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 618–19 (6th Cir.2006). Only then can a claims administrator distill the medical and vocational evidence, apply it to the occupational profile, and make a reasoned determination of whether or not the claimant is disabled." *McDonough v. Aetna Life Ins. Co.*, 783 F.3d 374, 380 (1st Cir. 2015). Courts including the Fourth Circuit have concluded that the DOT is an appropriate tool for defining an applicant's occupation and job duties in the process of making this determination. *See Neno v. Aetna Life Ins. Co.*, No. CV RDB-14-03071, 2015 WL 6326445, at *9 (D. Md. Oct. 20, 2015) (citing *Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 271 (4th Cir. 2002). Though a vocational expert may also be useful in conducting this analysis, it is not permissible to rely exclusively on the opinion of an expert where the administrator ignores other relevant evidence. *See Wadford v. Cont'l Cas. Co.*, 261 F. Supp. 2d 402, 412 (W.D.N.C. 2003) (noting that "[t]he Court is also disturbed by Defendant's apparent failure to make its decision after a reasoned and principled decision-making process" where the process "rel[ied] almost exclusively on the opinion of its vocational case manager . . .").

Though each ERISA benefits determination must be evaluated by the specific language of the policy, the Fourth Circuit has faced similar cases in the past. For example, in *Whitley*, the court noted that: "the central issue of this case is not [the claimant's] diagnosis, but whether,

given [the claimant's] *acknowledged* physical limitations, he proved he could not perform the essential duties of his former occupation." *Whitley v. Hartford Life & Acc. Ins. Co.*, 262 F. App'x 546, 552–53 (4th Cir. 2008) (emphasis in original). To answer this question, the court examined the details of an ergonomic job report to determine the specific physical duties of the established occupation. *Id.* at 553. In reversing the denial of benefits, the court acknowledged that, "even if a person could perform most of the job's 'light' essential duties, he or she might have difficulty with more taxing physical demands that occur intermittently." *Id.* Because the claimant could not perform *all* of the physical tasks required by his job, the court determined he was not able to perform all the materials duties of his occupation or "any occupation for which [he was qualified] by education, training, or experience," as was required by the policy. *Id.* at 552.

One final legal principle helps guide the resolution of this case. Courts have noted that conflicts of interest present difficult issues in the ERISA context because insurance companies will often both "determine[] whether an employee is eligible for benefits and pay[] benefits out of its own pocket." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). According to the Supreme Court, this creates a conflict of interest that the reviewing court should consider in making its decision. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). The weight that the court gives this factor, however, will depend on the specifics of the case. *Id.* In some instances, the conflict may act as a "tiebreaker" where the other factors are "closely balanced." *Id.* at 117.

### B. Application of the Legal Standard

Applying these principles, three key factors support the conclusion that Liberty abused its discretion in denying Mr. Sapp's LTD benefits: (1) in making its determination of Mr. Sapp's

"Own Occupation", Liberty either ignored or failed to consider important evidence of Mr. Sapp's actual physical job duties; (2) in examining all the evidence, Liberty's vocational expert should have considered the alternate DOT occupation of "Driver/Sales Worker"; and (3) Liberty's dual roles of administering the plan and making the benefits determination created a clear conflict of interest under *Glenn*. These factors will be addressed in turn.

1. *Evidence of Material and Substantial Duties*

By failing to adequately consider Mr. Sapp's job description and other evidence of the Material and Substantial duties of his job, Liberty did not engage in the "deliberate, principled reasoning process" that was required of it. *Williams*, 609 F.3d at 630. Liberty's vocational expert made her occupational determination based on Mr. Sapp's job title, which was "Sales Representative – Retail", and the job summary, which described the job as: "Performs functions to obtain sales, secure new business accounts and service the needs of the existing sales accounts with an assigned territory." The occupational analysis further noted that "[t]he job description indicates that this is a commission position, promoting the sale of wine or spirits products." *Id.* Relying on these excerpts from Republic's job description, the occupational analysis concluded that the Mr. Sapp's occupation only required S-Sedentary, or L-Light work.

What the report fails to mention, however, is that the same job description document also had a list of "Physical Demands," which included the need to: (1) stand; walk; use hands to finger, handle, or feel; reach with hands and arms' climb or balance; stoop, kneel, crouch, or crawl; (2) regularly lift and/or move up to 60 pounds; and (3) have the ability to regularly operate a motor vehicle. These requirements existed in the same document that contained the broad job description and summary, and they were therefore available to the vocational expert at the time the occupational analysis was completed. In spite of this, there is no mention of any of

8

Mr. Sapp's actual physical job requirements in either the expert's analysis or in Liberty's denial of his claim. This absence is particularly telling because Liberty was purportedly evaluating Mr. Sapp's *physical* ability to perform his Own Occupation after his surgery.

At a certain level, it is easy to generalize any occupation to a level at which it requires only light or sedentary work. In this case, Liberty's Vocational Expert examined Mr. Sapp's documents and concluded that he best fell into the category of: "Outside Sales Representative." At this level of breadth, however, the job title loses much of its descriptive value. For example, it is entirely unclear from this title whether this "occupation" requires sedentary work, such as an employee who sells cards or flowers; or, whether the sales representative is in fact in the business of selling and delivering wine (or refrigerators), which would require considerably more physical effort. Where the expert does not have appropriate documentation, such a broad generalization may be appropriate. When the physical demands are laid out in detail in a nine-page document, however, using this level of breadth constitutes an improperly cursory inquiry into the actual duties of the job.

There are two additional pieces of evidence available to Liberty that indicate Mr. Sapp's occupation required a higher degree of physical requirements than light or sedentary work. First, Liberty's own Claim Notes describe his occupation as "RETAIL SALES/HEAVY OCC." The source of this description is not clear, but it is evident that somebody at Liberty had previously decided that Mr. Sapp's occupation was "heavy" rather than light or sedentary.[1] This is at odds with the occupational analysis, and yet it receives no mention in Mr. Sapp's claim denial.

More importantly, in Mr. Sapp's August 22, 2014 claim appeal, he laid out the substantial physical demands of his job. These included: driving in excess of 24,000 miles per year; filling

---

[1] At oral argument, Liberty's counsel stated that this determination was likely made in relation to Mr. Sapp's short-term benefits evaluation.

9

shelves, lifting wine cases and bottles; pulling items from both low and high shelves; bending, kneeling, and climbing; and lifting cases of wine that average 45 pounds. This information similarly is not addressed in Liberty's response to Mr. Sapp's appeal. Indeed, Liberty did not even submit this information to its Vocational Expert for her review and there is no indication that Liberty considered this information at all in its ultimate denial of that appeal. Though Liberty is not required to give Mr. Sapp's submission determinative weight, its complete failure to address this evidence provides additional support for the notion that its claims evaluation process in this case was neither deliberate nor principled.

In arguing that Mr. Sapp's "Own Occupation" did not require more than light or sedentary work, Liberty focuses heavily on the Policy language, which dictates that Liberty "will consider the Covered Person's occupation as it is normally performed in the national economy." Liberty rightfully points out that, under the terms of the policy, Mr. Sapp "was insured for his own occupation, and that his job and occupational physical requirements do not need to be identical." This may be true, however, it misses the point. In this case, the vocational analysis on which Liberty relied did not examine the physical requirements of Mr. Sapp's job at all. The analysis skipped over a "review of the material duties of the claimant's particular position" and went straight to the material duties of the abstract sales positions listed on O*NET. *McDonough*, 783 F.3d at 380. As such, it is impossible to tell whether the job's physical requirements resemble those of the occupation because the job's physical requirements are completely absent from the analysis.

Under the terms of the policy, the job's Material and Substantial duties need not be identical to those of Mr. Sapp's Own Occupation, but it was unreasonable for Liberty to not consider the job's actual physical duties in performing its occupational analysis. This is

particularly true with regard to the information Mr. Sapp provided on appeal. The flaw in this process is highlighted by the fact that Liberty's Own Occupation determination (which required only light or sedentary work) did not encompass Mr. Sapp's actual job (which required heavy lifting and significant driving). Because it is unreasonable to fail to consider the physical requirements of Mr. Sapp's actual job when making a disability determination, Liberty abused its discretion in denying Mr. Sapp's LTD benefits.

### 2. *Alternative DOT Definition*

Liberty also abused its discretion in failing to consider the DOT definition of "Driver/Sales Worker" when making its LTD benefits determination. Liberty does not dispute that this would be a more appropriate job definition. Instead, Liberty cites *Helton* for the proposition that "[g]enerally, consideration of evidence outside of the administrative record is inappropriate when a coverage determination is reviewed for abuse of discretion." *Helton*, 709 F.3d at 352. Thus, Liberty argues that the DOT definition was not in front of it at the time it made its benefits decision and it therefore reasonably relied on the determination of the vocational expert.

This argument is flawed on its own terms because *Helton* recognizes an exception for external evidence in an abuse of discretion review when it is necessary to evaluate the *Booth* factors and when the plan administrator knew of the information. *Helton*, 709 F.3d at 356. Here, the DOT definition of "Driver/Sales Worker" helps to evaluate at least three Booth factors: (1) the adequacy of materials considered; (2) Liberty's decisionmaking process; and (3) the conflict of interest inherent in Liberty's dual positions. *Booth*, 201 F.3d at 342.

Whether Liberty knew of the DOT occupation "Driver/Sales Worker" is a matter for debate. Surely, it would be unfair to impute knowledge of all vocational materials and

11

definitions reviewed by the vocational expert onto Liberty. On the other hand, as discussed above, Liberty had ample evidence that Mr. Sapp's job required driving as well as lifting and moving heavy wine boxes. This is most apparent in Mr. Sapp's claim appeal, in which he states, among other things, that he "drive[s] in excess of 24,000 miles a year" and listed his significant physical duties. The availability of this mileage information casts doubt on the adequacy of Liberty's decisionmaking process because the vocational analysis does not mention driving or delivery as part of Mr. Sapp's occupational duties and does not consider "Driver/Sales Worker" as a possible occupation for Mr. Sapp.

In fact, the occupational analysis states that "[t]here is no appropriate DOT description for a general Sales Representative because the DOT is product or service specific." In light of the occupational definition of "Driver/Sales Worker," which apparently resembles Mr. Sapp's actual duties, Liberty's statement suggests an incomplete or flawed process. Where, as here, Mr. Sapp's occupation "*is not performed in one definitive manner in the national economy*," it seems only reasonable that the expert would search the DOT and other databases more broadly to look for other similar occupations based on the job descriptions provided. Thus, the vocational expert's complete omission of the "Driver/Sales Worker" DOT occupation illustrates the flaws in the process for Mr. Sapp's claim denial.

    3.    *Conflict of Interest*

In making its benefits determination and in its briefing to this court, Liberty relies almost exclusively on the analysis from its vocational expert as evidence of its reasoned decisionmaking and claims-evaluation process. If the expert had been independent of Liberty, this argument would likely be entitled to significant weight. In this case, however, the vocational expert was closely affiliated with Liberty, had a Liberty Mutual email address, and used a Liberty document

header at the top of her report. Liberty does not dispute that this created a conflict of interest because it was responsible for both evaluating and, if necessary, paying Mr. Sapp's claim.

This is precisely the sort of conflict identified by the Supreme Court in *Glenn*, and it is entitled to close consideration. 554 U.S. 105, 108 (2008). The extent to which this conflict influenced Liberty's decision is unclear from the record. However, as discussed above, Mr. Sapp has highlighted a number of convincing pieces of evidence that Liberty ignored in its benefits determination. On its face, this suggests a flaw in Liberty's decisionmaking process. Therefore, it represents the possible influence of this conflict of interest as well.

As illustrated above, this case could be decided on the evidence on the record and a straightforward abuse of discretion analysis. Even if it were a closer call, however, the Supreme Court has noted that Liberty's conflict of interest could act as the "tiebreaker" in favor of Mr. Sapp. *See Glenn*, 554 U.S. at 108.

### III. REMEDY

Having determined that Liberty abused its discretion in denying Mr. Sapp's LTD benefits application, the Court must now turn to the question of the appropriate remedy. Where a court believes that an administrator lacked adequate evidence in making its determination, the appropriate remedy is to remand the case to the administrator. *Berry v. Ciba-Geigy Corp.*, 761 F.2d 1003, 1007 (4th Cir. 1985). As a general matter, the decision to remand "should be used sparingly." *Id.* at 1008 (internal citations and quotations omitted). Remand is "most appropriate whe[n] the plan itself commits the trustees to consider relevant information which they failed to consider or whe[n] the decision involves records that were readily available." *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 607 (4th Cir.1999).

On the other hand, "remand is not required, particularly in cases in which evidence shows that the administrator abused its discretion." *Helton*, 709 F.3d at 360. In addition, remand is not necessary where there are no factual determinations to be made by the administrator. *See Williams v. Int'l Paper Co.*, 227 F.3d 706, 715 (6th Cir. 2000) (collecting cases where courts retroactively granted benefits without remand). This is the case where "the trustees have demonstrated a manifest unwillingness to give fair consideration to evidence that supports the claimant" and "the full evidentiary record admits of only one possible conclusion." *See Miller v. United Welfare Fund*, 72 F. 3d 1066, 1074-75 (2d Cir. 1995) (Calabresi, J., concurring in part, dissenting in part). In other words, remand is the preferred remedy unless it would effectively be a "useless formality." *Id.* (internal citations omitted).

As a practical matter, the Court sees no need for remand in this case because there was no evidence missing from the initial determination. The medical evidence is not disputed and, when Liberty made its final decision, it was in possession of the job description as well as the job information Mr. Sapp provided in his appeal. Both of these documents detailed the physical requirements of Mr. Sapp's job, and both of them should have been at least considered and addressed in making the determination of benefits. Indeed, there is no allegation from either party that any evidence was missing from the analysis; the error in Liberty's decision lies in its failure to appropriately consider these documents, not in their absence.

Therefore, the Court concludes that a remand here would prove to be a "useless formality." Again, the case of *Whitley* is instructive. *Whitley v. Hartford Life & Acc. Ins. Co.*, 262 F. App'x 546, 552–53 (4th Cir. 2008). There, the Fourth Circuit directed the district court to enter judgment for the claimant rather than remand because there was apparently nothing left for

14

the plan administrator to decide.² Similarly, in order to make a benefits determination consistent with this opinion, Liberty would simply go back to consult the very same documents and this time reach the conclusion that Mr. Sapp's occupation required him to go beyond his doctor's uncontested instructions that he not lift more than 10 pounds, bend, twist, stoop, and/or sit for longer than 45 minutes.

The Court need not rely on outside evidence to reach this determination because the job description is detailed clearly in the administrative record. It is irrelevant whether Liberty would reach its decision on remand by way of a renewed occupational analysis that found the DOT occupation "Driver/Sales Worker" to be a more appropriate title, or whether it would instead reach that conclusion by appropriately considering the detailed duties contained in the job description. Either way, the outcome would be the same. Consequently, because a remand is unnecessary, this Court finds that Mr. Sapp is entitled to retroactive long-term disability benefits beginning on the date that his short-term benefits expired.

## IV. CONCLUSION

For the reasons discussed above, the Court finds that Liberty abused its discretion in denying Mr. Sapp's claim for long-term benefits. Therefore, Mr. Sapp's motion for summary judgment is granted and Liberty's related cross-motion is denied. Further, because a remand would be unnecessary in this case, the Court finds that Mr. Sapp is entitled to retroactive benefits.

An appropriate order shall issue.

Sept 28, 2016

/s/
Liam O'Grady
United States District Judge

---

² The parties ultimately settled this case at the district court when they "agreed upon the amount of past-due benefits owed plaintiffs" and "agreed upon a compromise and settlement regarding Plaintiff's claim for attorney's fees." *Whitley v. Hartford Life & Acc. Ins. Co.*, Case No. 3:04-cv-00129-W (W.D.N.C. Mar. 24, 2008), Dkt. No. 49.

15